# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| | : | NO. 14-652-10 |
| FRANCISCO GONZALEZ JOSE | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                         **June 25, 2018**

      Convicted and sentenced for his role in a heroin drug trafficking organization, and having exhausted his direct appeal rights, Francisco Gonzalez Jose now asks us to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He does not argue a lack of evidence. Mr. Gonzalez Jose argues ineffective assistance of trial counsel for failing to object to the instruction we gave the jury after replacing an ill juror with an alternate juror. Mr. Gonzalez Jose appealed from the judgment of sentence raising, among several issues, this same error in the jury charge. Our court of appeals rejected Mr. Gonzalez Jose's challenges. He now claims ineffective assistance of trial counsel for failing to object to the jury charge limiting review on appeal to the plain error standard. He argues if his trial counsel objected to the jury instruction, the court of appeals would not have applied a plain error standard and the outcome of his appeal would have been different. Mr. Gonzalez Jose argues he is entitled to a new trial. Analyzed under the familiar standards defined by the Supreme Court in *Strickland v. Washington*, we deny Mr. Gonzalez Jose's motion.

## I. Background[1]

      A grand jury returned a Superseding Indictment against the Mexico-based Laredo Drug Trafficking Organization ("DTO") led by fugitives Antonio Laredo and Ismael Laredo and

thirty-five individuals including Mr. Gonzalez Jose. The Superseding Indictment charged the DTO conspired from 2008 to November 2014 to import and distribute over 1,000 kilograms of heroin in Philadelphia and launder millions of dollars in heroin proceeds.[2] Mr. Gonzalez Jose, based in Philadelphia, worked both the supply and payment side of the conspiracy. The grand jury charged him as one of the Philadelphia-based heroin distributors, responsible for distributing and selling multi-kilogram quantities of heroin and with collecting and concealing hundreds of thousands of dollars intended to be secretly returned to the Laredo DTO in Mexico.

The eight days of evidence adduced at trial overwhelmingly confirmed Mr. Gonzalez Jose played a key middle management role for the Laredo DTO in Philadelphia. He regularly distributed multi-kilogram quantities of heroin in the Philadelphia area. Mr. Gonzalez Jose made multiple payments aggregating hundreds of thousands of dollars to the Laredo DTO representing the proceeds of heroin sales in Philadelphia. The United States showed how he concealed these payments.

The United States adduced evidence Mr. Gonzalez Jose conspired to distribute at least ninety kilograms of heroin and laundered approximately six million dollars in heroin sales. Several co-conspirators identified Mr. Gonzalez Jose's role in the money laundering conspiracy. Co-conspirator Joseph Torres, admitted member of the Laredo DTO and son-in-law of Antonio Laredo, testified to maintaining written ledgers.[3] Mr. Torres identified ledgers showing payments made by Mr. Gonzalez Jose in an exchange of heroin and money.[4] Mr. Torres testified to direct payment transactions with Mr. Gonzalez Jose as the direction of Antonio Laredo;[5] Mr. Torres picked up money from Mr. Gonzalez Jose as payment for heroin;[6] Mr. Torres knew Mr. Gonzalez Jose made one bank deposit for Antonio Laredo;[7] Mr. Torres always received money from Mr. Gonzalez Jose in bulk;[8] and, Mr. Torres described at least $100,000 collected from Mr.

Gonzalez Jose and recorded in Mr. Torres' ledger.[9]

Both Mr. Torres and co-conspirator Bertin Torres Sanchez testified to a ledger they maintained tracking deliveries of money and drugs. Mr. Torres testified he knew Mr. Gonzalez Jose as "Franci" and identified his ledger recording transactions for Mr. Gonzalez Jose for a six-week period in May – July, 2013.[10] Mr. Torres testified to being present at a cash delivery with Mr. Sanchez and Mr. Gonzalez Jose.[11]

Co-conspirator Mr. Sanchez testified he kept track of heroin he received and distributed in a small notebook until Mr. Torres put the information into a computer spreadsheet.[12] Mr. Sanchez testified his ledger records money and heroin Mr. Gonzalez Jose gave to Mr. Sanchez; Mr. Sanchez met Mr. Gonzalez Jose nine or ten times for the purpose of transferring money and heroin.[13] Mr. Sanchez described the transactions in the ledger including, for example, a May 28, 2013 transaction where Mr. Gonzalez Jose paid Mr. Sanchez $50,000 for heroin previously given to Mr. Gonzalez Jose.[14] Mr. Sanchez described the record of telephone calls between him and Mr. Gonzalez Jose, and confirmed he gave Mr. Gonzalez Jose five kilograms of heroin on July 4, 2013 and Mr. Gonzalez Jose gave him money on July 14, 2013 as reflected in Mr. Torres's and Mr. Sanchez's ledger.[15]

Co-conspirator Edwin Vidal testified he laundered money through Western Union accounts as directed by Antonio Laredo from 2012 to 2014.[16] Mr. Vidal received money directly from Mr. Gonzalez Jose in amounts ranging from $50,000 to $180,000 beginning in 2012.[17] Antonio Laredo directed Mr. Vidal to deliver heroin to Mr. Gonzalez Jose. Mr. Vidal testified he gave heroin hidden inside car batteries to Mr. Gonzalez Jose and then received cash from Mr. Gonzalez Jose in exchange for heroin.[18] Mr. Vidal testified he gave heroin to Mr. Gonzalez Jose hidden inside an air compressor and received money from Mr. Gonzalez Jose.[19]

Co-conspirator Frank Christian Peralta testified he picked up money from Mr. Gonzalez Jose packed in a sneaker box and turned over the money to another member of the Laredo DTO.[20] Co-conspirator Leandro Rodriguez Urena authenticated an exhibit as his handwriting on a paper noting cash collected, including from Mr. Gonzalez Jose, for heroin.[21] Mr. Urena testified he and Mr. Vidal together picked up $150,000 from Mr. Gonzalez Jose at the direction of Antonio Laredo, and the money Mr. Urena collected came from the drugs given to Mr. Gonzalez Jose.[22] Mr. Urena received $100,000 and $75,000 from Mr. Gonzalez Jose on another occasions.[23] Mr. Urena testified he delivered multiple kilograms of heroin to Mr. Gonzalez Jose four or times at the direction of Antonio Laredo,[24] and picked up money from Mr. Gonzalez Jose six or seven times.[25]

Additional conspirators testified to Mr. Gonzalez Jose's participation in the Laredo DTO. For example, co-conspirator Gregorio Lantigua Reyes testified he maintained ledgers.[26] Mr. Reyes testified to his knowledge of Mr. Gonzalez Jose "making bundles of heroin."[27] Co-conspirator Euddy Izquierdo testified to exchanges with Mr. Gonzalez Jose of drugs and money at the direction of Antonio Laredo and to Mr. Gonzalez Jose distributing heroin for the Laredo DTO through vehicles equipped with trap compartments to conceal drugs.[28] Co-conspirator Frank Felix-Herrera testified to a transaction with Mr. Gonzalez Jose of heroin and money in connection with the Laredo DTO and testified generally to distributing heroin for the Laredo DTO.[29]

Mr. Gonzalez Jose is not challenging this overwhelming evidence today. Mr. Gonzalez Jose's § 2255 motion challenges our instruction to the jury when one juror became ill. After approximately ninety minutes of deliberation, a juror notified us of illness preventing him from continuing.[30] Outside the presence of the jury, we spoke with counsel on the record regarding

4

the ill juror.[31] After questioning the ill juror regarding his condition, we excused the juror without objection from counsel.[32] After replacing the ill juror with an alternate, we instructed the jury:

> Ladies and gentlemen, I -- I appreciate your extraordinary efforts. As you may know, we have replaced one -- Juror Number 10 with an alternate and I appreciate the alternate's service.
>
> Under the law the selection of a foreperson remains. I don't need to know that. The selection of a foreperson remains, but with a new alternate that person has to be brought up to speed on any decisions, determinations and you have to, sort of -- so I don't want to know this.
>
> But by way of example if you had a sheet of paper and you went through Questions 1 and 2 or 1(A) or whatever you did, you'd have to ask that person their view just like -- just like they were in the room. So you have to start over at one and say -- I don't know the person's name -- I don't know the person's name, let's say it's Bill or Sue -- Sue, you know, what do you think about -- what do you think about one? What do you think about two? You know that kind of thing you have [to] review. And then if your minds change because of what Bill or Sue says then you have to revisit the issue. And if you've taken a vote -- this is the most important -- if you've taken a vote on any issue already that has resulted in a number -- that resulted in something on the piece of paper then you have to revote that number. Okay.[33]

Mr. Gonzalez Jose did not object to this instruction (the "Jury Instruction").

The reconstituted jury then deliberated for approximately two hours and fifteen minutes and found Mr. Gonzalez Jose guilty of conspiracy to distribute one kilogram or more of heroin; conspiracy to import one kilogram or more of heroin; two counts of possession with the intent to distribute one kilogram or more of heroin; aiding and abetting; and conspiracy to commit money laundering.[34]

Mr. Gonzalez Jose timely moved for a new trial and acquittal raising, among other issues, an objection to the Jury Instruction.[35] We denied Mr. Gonzalez Jose's post-trial motions.[36] We sentenced Mr. Gonzalez Jose on September 8, 2016 to 220 months imprisonment, five years of supervised release, a $10,000 fine and $500 special assessment.

Retaining new counsel, Mr. Gonzalez Jose filed a timely appeal from the final judgment of sentence. On appeal, Mr. Gonzalez Jose argued we erred in our instructions after replacing the ill juror with an alternate by failing to instruct the jury to "begin its deliberations anew" as required by Federal Rule of Civil Procedure 24. The United States Court of Appeals for the Third Circuit rejected this argument and affirmed the judgment and sentence in its September 26, 2017 opinion.[37] Mr. Gonzalez Jose then moved under 28 U.S.C. § 2255.

## II. Analysis

Mr. Gonzalez Jose argues he is entitled to relief under § 2255 based on ineffectiveness of his trial counsel. Mr. Gonzalez Jose argues our Jury Instruction failed to explicitly instruct jurors, after installing the alternate juror, to "begin its deliberations anew." Mr. Gonzalez Jose asserts if his trial counsel had objected, our court of appeals would not have limited its review to plain error, and the outcome of the appeal would have been different. He argues he is entitled to a new trial.

Under the two-part standard of *Strickland v. Washington*,[38] Mr. Gonzalez Jose bears the burden of showing (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense."[39] Mr. Gonzalez Jose must demonstrate deficient performance and prejudice to have a valid claim for relief.[40]

To establish deficient performance of his trial counsel, Mr. Gonzalez Jose must show "counsel's representation fell below an objective standard of reasonableness."[41] There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[42] To establish prejudice, Mr. Gonzalez Jose must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[43]

6

### A. Appellate court's standards for reviewing jury instructions.

Where, as here, trial counsel does not object to jury instructions, our court of appeals reviews the instruction for plain error. As explained in its opinion affirming the jury verdict, the court of appeals will grant relief under a plain error standard only if it concludes "(1) there was an error, (2) the error was 'clear or obvious,' and (3) the error 'affected the appellant's substantial rights.'"[44]

Where trial counsel objects to a jury instruction, our court of appeals "exercises[s] plenary review in determining 'whether the jury instructions stated the proper legal standard.'"[45] The wording of instructions is reviewed for abuse of discretion.[46] The court of appeals must reverse a jury instruction if it "was capable of confusing and thereby misleading the jury."[47] When reviewing a jury instruction, our court of appeals "considers[s] the totality of the instructions and not a particular sentence or paragraph in isolation."[48]

### B. Even if the Court of Appeals applied plenary review to the Jury Instruction, Mr. Gonzalez Jose cannot show prejudice under *Strickland*.

Mr. Gonzalez Jose contends ineffective assistance of his trial counsel for failing to object to our Jury Instruction. Mr. Gonzalez Jose contends, as he did in his post-trial motions and on appeal, we erred by failing to explicitly instruct the jury using the words "to begin its deliberations anew" found in Rule 24. Federal Rule of Criminal Procedure 24(c)(3) provides "[t]he court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew."

Mr. Gonzalez Jose argues but for his trial counsel's error, the result of his *appeal* would have been different because the Court of Appeals would not have limited its review of the Jury

7

Instruction to plain error. He argues he is entitled to a new trial. He assumes, without any authority, argument, or reasoning, the Court of Appeals would have found the Jury Instruction failed to state the proper legal standard and would have vacated his conviction and ordered a new trial. He does not provide us with any argument of a reasonable probability, *but for*, his counsel's error the results of the appeal would have been different.

Mr. Gonzalez Jose's argument is based solely on an assertion we did not use the exact words "begin its deliberations anew." Although we did not use those exact words, the law in this Circuit does not require us to do so and our court of appeals in *Claudio v. Snyder* rejected the same argument. In *Claudio*, the court of appeals reviewed a trial court's instruction to the jury, after replacing an ill juror with an alternative, to "'take whatever time is necessary" to inform the alternate juror of deliberations.[49] The court found the instruction the "functional equivalent" to the jury to "begin its deliberations anew."[50]

In denying Mr. Gonzalez Jose's appeal challenging the Jury Instruction, the Court of Appeals, relied on *Claudio*, citing its holding "'a violation of the established criminal procedure is not sufficient in itself to create a constitutional violation' and that the specific wording of Rule 24 does not hold 'talismanic' value. So long as the district court's instruction to the jury upon the substitution of an alternate is the 'functional equivalent' of an instruction to begin deliberations anew, there is no violation of the defendant's constitutional rights."[51] The Court of Appeals further found Mr. Gonzalez Jose did not "proffer anything to show that any error would have affected the outcome of the proceedings."[52]

We read the court's opinion in *Sotelo* to have addressed any prejudice argument by Mr. Gonzalez Jose. Even if the Court of Appeals applied plenary review, we see no difference in the outcome of the appeal. Even if the Court of Appeals addressed whether our instructions to the

8

jurors, taken as a whole, are the functional equivalent of "begin deliberations anew," it would have so found. As we explained in our memorandum opinion denying Mr. Gonzalez Jose's post-trial motions, we instructed the reconstituted jury to consider every issue, and to ask the new juror his/her view "just like they were in the room" during the earlier deliberations. We instructed the jury "to start over" – synonymous with "begin anew" - and, as an example, if the jury went through questions, ask the new juror "'what do you think about one?' 'what do you think about two?' You know that kind of thing you have review. And if your minds change because of what [new juror] says, then you have to revisit the issue." We instructed the jury "[a]nd if you've taken a vote - this is the most important - if you've taken a vote on any issue already that has resulted in a number - that resulted in something on the piece of paper then you have to revote that number."

It is Mr. Gonzalez Jose's burden, under *Strickland's* prejudice prong to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[53] Mr. Gonzalez Jose fails to provide us with argument as to how an objection to the Jury Instruction would have altered the outcome of the appeal or the trial. The reconstituted jury deliberated for over two hours and considered the overwhelming evidence of Mr. Gonzalez Jose's role in the heroin trafficking and money laundering conspiracies. As set forth above, and in our memorandum denying Mr. Gonzalez Jose's post-trial motions, the evidence adduced at trial showed Mr. Gonzalez Jose's role in the Laredo DTO, including the testimony of co-conspirators and ledgers showing payments made by Mr. Gonzalez Jose in an exchange of heroin and money. There is no reasonable probability but for his trial counsel's failure to object to the Jury Instruction, giving the functional equivalent of an instruction under Rule 24(c)(3), his appeal would have been different.

## III. Conclusion

Having failed to meet the prejudice prong under *Strickland*, we deny Mr. Gonzalez Jose's § 2255 motion in the accompanying Order. We decline to issue a certificate of appealability as Mr. Gonzalez Jose has neither shown a denial of a federal constitutional right nor has he established reasonable jurists would debate the correctness of our ruling.

---

[1] Our previous opinions addressing post-trial motions detailed the evidence. *See* Memorandum denying Mr. Gonzalez Jose's Motion for acquittal or for a new trial (ECF Doc. No. 923). We only include background relevant to Mr. Gonzalez Jose's motion based on ineffective assistance of counsel.

[2] ECF Doc. No. 23. The Superseding Indictment charged Mr. Gonzalez Jose with conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 21 U.S.C. §§ 963, 960(b)(1)(A) (Counts 1 and 2); two counts of aiding and abetting and causing the distribution of one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2 (Counts 13 and 36); and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count 44).

[3] April 19, 2016 Notes of Testimony ("N.T.") at 40-46 (ECF Doc. No. 847).

[4] *Id.* at 45-46, 55, 65-68.

[5] *Id.* at 68-69.

[6] *Id.* 119-120; 137-138.

[7] *Id.* at 120.

[8] *Id.* at 121.

[9] April 18, 2016 N.T. at 272 (ECF Doc. No. 846).

[10] April 19, 2016 N.T. at 44-45 (ECF Doc. No. 847).

[11] *Id.* at 44-46.

[12] April 20, 2016 N.T. at 137-143 (ECF Doc. No. 848).

[13] *Id.* at 141-142. Sanchez identified "Franci" as Mr. Gonzalez Jose. *Id.* at 143.

[14] *Id.* at 147-150.

[15] *Id.* at 166-167.

[16] *Id.* at 234-236, 238.

[17] *Id.* at 236-244.

[18] *Id.* at 245-255.

[19] *Id.* at 259-264.

[20] April 21, 2016 N.T. at 19-25 (ECF Doc. No. 851).

[21] *Id.* at 74-75.

[22] *Id.* at 74-76.

[23] *Id.* at 81-84.

[24] *Id.* at 86-87.

[25] *Id.* at 99-101.

[26] April 21, 2016 N.T. at 30 (ECF Doc. No. 849).

[27] *Id.* at 40-41.

[28] April 21, 2016 N.T. at 140-146 (ECF Doc. No. 851).

[29] *Id.* at 105-109; 110-114.

[30] April 22, 2016 N.T at 49-50 (ECF Doc. No. 732).

[31] *Id.* at 49-53.

[32] *Id.* at 53-59, 65-66.

[33] *Id.* at 67-68.

[34] *See* Judgment at ECF Doc. No. 929.

[35] ECF Doc. No. 619.

[36] ECF Doc. Nos. 921, 923.

[37] *United States v. Sotelo*, 707 F.App'x 77 (3d Cir. 2017).

[38] 466 U.S. 668 (1984).

[39] *Id.* at 687; *United States v. Washington*, 869 F.3d 193, 204 (3d Cir. 2017).

[40] *Washington*, 869 F.3d at 204 (quoting *United States v. Travillion*, 759 F.3d 281, 289–90 (3d Cir. 2014)).

[41] *United States v. Vaskas*, 696 F. App'x 564, 566 (3d Cir. 2017) (quoting *Strickland*, 466 U.S. at 688).

[42] *Strickland*, 466 U.S. at 689.

[43] *Vaskas*, 696 F.App'x at 566 (quoting *Strickland*, 466 U.S. at 694).

[44] *Sotelo*, 707 F.App'x at 84 (quoting *United States v. Stinson*, 734 F.3d 180, 184 (3d Cir. 2013)).

[45] *United States v. Shaw*, --- F.3d ---. No. 16-2860, 2018 WL 2423174, at *6 (3d Cir. May 30, 2018) (quoting *United States v. Khorozian*, 333 F.3d 498, 507–08 (3d Cir. 2003)).

[46] *Id.* (quoting *Gov't of Virgin Islands v. Mills*, 821 F.3d 448, 465 (3d Cir. 2016)).

[47] *Id.* (quoting *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (en banc)).

[48] *Id.* (quoting *Khorozian*, 333 F.3d at 508).

[49] *Claudio v. Snyder*, 68 F.3d 1573, 1577 (3d Cir. 1995), *as amended* (Dec 1. 1995). The jury instruction challenged in *Claudio* read in part:

> You find yourself [sic] somewhat of a disadvantage. Fortunately, however, with your diligence and the cooperation of your fellow jurors, you will be able to familiarize yourself with the deliberations concluded thus far, so that you are not at any disadvantage with regard to understanding all of the evidence and the views of your fellow jurors. It is essential and critical that you take whatever time is necessary to familiarize yourself with the evidence and the thinking and views of the jurors.
>
> You must guard against the natural feelings to rush or hasten in order to keep up with the majority or the other 11. I instruct you to be conscious, and forthright in telling the others if you feel any disadvantage with regard to the level of your understanding.

> When and only when you feel yourself adequately and reasonably equipped to understand what has transpired thus far in the deliberations, should you signal to your fellow jurors your desire to move forward.

*Id.* at n. 3 (citng *Claudio v. State*, 585 A.3d 1278, 1284 n.9 (Del. 1991)).

[50] *Id.* at 1577. The United States Court of Appeals for the Fourth Circuit similarly holds. For example, in *United States v. Runyon*, the Fourth Circuit rejected a challenge to the jury instruction given after the district court replaced a juror with an alternate. 707 F.3d 475 (4th Cir. 2013). In that case, the district instructed the jury "I would tell you that what you need to do is, now it is the 12 of you, and if you would review for [the second alternate juror] – you were out only a little over an hour yesterday, and [Jury Foreperson], as foreperson, if you would just see that you review with her what was discussed and key her in, and then proceed with your deliberations." *Id.* at 518. The Fourth Circuit rejected the challenge to the jury charge, finding the defendant could not show error affecting his "substantial rights." *Id.* at 519. The court of appeals applied the plain error standard because defendant's trial counsel did not object to the instruction. The court found "'while a careful picking apart of the instructions' wording [may often] reveal minor ambiguity, when read in [their] entirety,' it may become apparent that the 'instructions were clear and did not permit' an improper verdict." *Id.* (quoting *United States v. Moran*, 493 F.3d 1002, 1010 (9th Cir. 2007) (per curiam)). And although the district court "did not repeat the words of [Rule 24(c)(3)] verbatim, the court in substance instructed the jury to rewind its proceedings for the benefit of the alternate before proceeding further. This, in essence, is what the Rule requires." *Id.*

[51] *Sotelo*, 707 F.App'x at 84 (citing *Claudio*, 68 F.3d at 1577).

[52] *Id.* at 85.

[53] *Vaskas*, 696 F.App'x at 566 (quoting *Strickland*, 466 U.S. at 694).