**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | NO. 14-652-10 |
| | : | |
| **FRANCISCO GONZALEZ JOSE** | : | |

**MEMORANDUM**

**KEARNEY, J.** December 9, 2025

    The jury found Francisco Gonzales Jose guilty of several offenses leading to us imposing a sentence in September 2016 of 220 months of incarceration followed by five years of supervised release. The Bureau of Prisons presently supervises his custody at FCI Ashland in Kentucky. Mr. Gonzalez Jose now pro se asks we reduce his sentence to time served citing his present medical condition, a perceived change in law, and the Bureau of Prisons's ongoing harassment and retaliation for seeking this relief. We understand Mr. Gonzalez Jose's medical condition from his medical records. We do not condone harsh treatment or retaliation. But we cannot grant compassionate release based on his arguments. There is no basis to find the Bureau of Prisons has not and cannot address his medical conditions involving inflammation of the gallbladder, a varicocele, abdominal issues, pain, and other chronic issues. There is no basis to find a change in law, other reasons, or his asserted rehabilitation warrants release. We also cannot release Mr. Gonzales Jose based on alleged retaliation for moving to reduce his sentence or the alleged failures in the conditions of custody possibly violative of his Eighth Amendment rights. He may exhaust his Facility's grievance process and then seek redress for perceived constitutional violations against Facility officials in the appropriate federal court.

I. **Background**

A grand jury returned a Superseding Indictment against the Mexico-based Laredo Drug Trafficking Organization charging thirty-five individuals including Mr. Gonzalez Jose. The Superseding Indictment charged the Organization conspired from 2008 to 2014 to import and distribute over 1,000 kilograms of heroin in Philadelphia and launder millions of dollars in heroin proceeds.[1] Mr. Gonzalez Jose, based in Philadelphia, worked both the supply and payment side of the conspiracy. The grand jury charged him as one of the Philadelphia-based heroin distributors, responsible for distributing and selling multi-kilogram quantities of heroin and with collecting and concealing hundreds of thousands of dollars intended to be secretly returned to the Laredo Organization in Mexico.

The eight days of evidence adduced at trial overwhelmingly confirmed Mr. Gonzalez Jose played a key middle management role for the Laredo Organization in Philadelphia. He regularly distributed multi-kilogram quantities of heroin in the Philadelphia area. Mr. Gonzalez Jose made multiple payments aggregating hundreds of thousands of dollars to the Laredo Organization representing the proceeds of heroin sales in Philadelphia. He concealed these payments. The United States adduced evidence of Mr. Gonzalez Jose conspiring to distribute at least ninety kilograms of heroin and laundering approximately $6 million in heroin sales.

Mr. Gonzalez Jose moved at the close of the United States' case for judgment of acquittal under Federal Rule of Criminal Procedure 29 on the money laundering charge arguing a lack of evidence to support a conviction. We denied the Rule 29 motion. Mr. Gonzalez Jose timely moved for a new trial and acquittal. We denied Mr. Gonzalez Jose's post-trial motions.

We sentenced Mr. Gonzalez Jose on September 8, 2016 to 220 months imprisonment, five years of supervised release, a $10,000 fine, and a $500 special assessment. Retaining new counsel,

Mr. Gonzalez Jose timely appealed. Our Court of Appeals affirmed the judgment and sentence in September 2017.[2]

Mr. Gonzalez Jose filed a counseled habeas petition arguing ineffective assistance of his trial counsel. We denied his habeas petition and declined to issue a certificate of appealability.[3] We denied Mr. Gonzalez Jose's motion for reconsideration.[4] Mr. Gonzalez Jose appealed seeking a certificate of appealability. Our Court of Appeals denied Mr. Gonzalez Jose a certificate of appealability in February 2019.[5]

### *Mr. Gonzalez Jose now seeks compassionate release.*

Mr. Gonzalez Jose is currently serving his sentence at FCI Ashland, Kentucky with a minimum release date of August 14, 2030. He served approximately 119 months and has good conduct time of approximately 16 months for a total time served of 135 months of his 220-month term, approximately 61% of his total sentence.[6] Mr. Gonzalez Jose is the subject of an immigration detainer and will likely be deported to the Dominican Republic upon release.

Mr. Gonzalez Jose now moves for compassionate release based on his medical records and his conditions of custody. He identifies extraordinary and compelling reasons for reducing his considered sentence: recurring inflammation and "scaring pain [sic]" of the left testicle; inflammation with pain in the abdomen (gallbladder involvement); chronic fatigue, bloodshot and yellowing of the whites of his eyes and skin; stomach pain with diarrhea and bloody stool; severe pain in back and kidney area including pain on urination; dizzy spells; history of colon polyps with no colonoscopy scheduled to address ongoing symptoms; a stomach ulcer restricting his diet the Facility is unable to accommodate; confinement to bed or chair for 80% of the day because of pain and shortness of breath requiring help with all areas of daily living.[7] He also argues the correctional

officers and officials at FCI Ashland are retaliating against him for seeking compassionate release and are otherwise subjecting him to harsh treatment.[8]

### *Review of the medical records from December 2024 to October 22, 2025.*

We begin with his medical concerns. The Facility's medical personnel examined Mr. Gonzalez Jose in approximately twenty-two clinical encounters in the eleven month period from November 2024 to October 22, 2025.[9] The medical records show Mr. Gonzalez Jose is receiving medication to treat his medical conditions and the Facility provided ten pain management assessments and over twenty patient education assessments.[10]

The records confirm FCI Ashland sent Mr. Gonzalez Jose to the Emergency Department of King's Daughters Medical Center in Ashland, Kentucky on December 26, 2024 for the chief complaint of abdominal pain.[11] Mr. Gonzalez Jose appeared normal and not in acute distress.[12] The Medical Center performed a CT scan of the abdomen and pelvis. The medical professionals found no acute abnormalities or emergent findings and all laboratory tests were normal.[13] The Medical Center discharged Mr. Gonzalez Jose the same day with instructions to follow up with his primary care physician and gastrointestinal provider and return to the Emergency Department with new or worsening symptoms.[14] There are no other instructions. The Medical Center's records do not support Mr. Gonzalez Jose's assertion the Facility is not following orders from King's Daughters Medical Center.

The Facility then ordered an x-ray of Mr. Gonzalez Jose's abdomen on January 27, 2025 resulting in "unremarkable abdominal radiographs."[15]

The Facility ordered a gastroenterology consultation at King's Daughters Medical Center on March 7, 2025.[16] A nurse practitioner at the Medical Center examined Mr. Gonzalez Jose. On examination, Mr. Gonzalez Jose reported ongoing and worsening pain and increased right upper

4

quadrant pain radiating to the back, nausea, decreased appetite, pain worsening after meals, and yellowing of the eyes.[17] Laboratory testing of Mr. Gonzalez Jose's bilirubin level measured within normal limits.[18] The nurse practitioner instructed Mr. Gonzalez Jose to stop taking hydrocortisone and pantoprazole (a medication for heartburn caused by gastroesophageal reflux disease "GERD"), instructed him to continue with his other medications, and scheduled an MRI of the abdomen and biliary imaging in May 2025.[19]

The Facility, consistent with the Medical Center's March 7, 2025 order for additional testing, arranged for a nuclear medicine biliary imaging and MRI of the abdomen in July 2025.[20] The testing revealed inflammation of the gallbladder (cholecystitis), but no other abnormalities including of the gallbladder, liver, pancreas, and kidneys.[21] The July 2025 testing found no evidence of choledocholithiasis or acute abnormalities.[22] The Facility ordered a second x-ray of Mr. Gonzalez Jose's abdomen along with a chest x-ray on August 26, 2025.[23] The study revealed a normal result.[24]

The Facility ordered surgery to remove Mr. Gonzalez Jose's gallbladder on a non-emergent basis.[25] The United States advises the Bureau of Prisons does not reveal the exact date of a planned procedure for security reasons.[26]

So, as of the last medical record on October 22, 2025, the Facility continued providing Mr. Gonzalez Jose all the medications as directed by the gastroenterology nurse practitioner from the March 7, 2025 consultation visit.[27] There is no record evidencing the Facility ignored the Medical Center's instructions regarding care or treatment of cholecystitis.

The medical records also show the Facility's medical providers counseled him on avoiding food high in fat, spice, and processed ingredients as exacerbations of stomach ulcer.[28] As recently

5

as October 1, 2025, a clinical encounter shows Mr. Gonzalez Jose's "dietary nonadherence to recommended modifications with continued intake of foods known to exacerbate GI symptoms."[29] The October 22, 2025 clinical encounter shows Mr. Gonzalez Jose denied dizziness, bloody stools, abdominal pain, and presented with a grossly normal gait.[30]

***Mr. Gonzalez Jose is recently diagnosed with a varicocele for which he is receiving treatment.***

A nurse practitioner examined Mr. Gonzalez Jose on October 22, 2025 as a follow-up after an abnormal scrotal ultrasound.[31] Mr. Gonzalez Jose denied chest pain, shortness of breath, headaches, dizziness, increased fatigue, urinary symptoms, bowel or bladder concerns, anxiety, depression, and suicidal/homicidal ideation, but he reported testicular pain.[32] The nurse practitioner noted a "moderate to prominent left-sided varicocele to area of palpable abnormality" confirmed by an ultrasound performed on October 1, 2025.[33]

The nurse practitioner examined Mr. Gonzalez Jose on October 22, 2025, noting she will send the ultrasound report to urology for symptomatic management and possible varicocelectomy, noting she is "waiting for [Mr. Gonzalez Jose] as he is currently deliberating wanting to follow up to urology for evaluation and discussion of varicocele repair. Microsurgical subinguinal varicocelectomy is preferred due to lower recurrence and complication rates," and noting her plan for conservative management including pain medication and monitoring for change in symptoms, further workup, and education.[34] There are no further medical records.

***Updated medical records.***

Mr. Gonzalez Jose provided us with additional medical records since October 30, 2025.[35] He contends he is on "medical convalescence" as ordered by a provider at the Facility on November 3, 2025.[36] The Medical Duty Status report shows the Facility assigned Mr. Gonzalez Jose a lower bunk until January 26, 2026; has a physical limitation/restriction for "all sports" until

6

February 28, 2026; and a work restriction/limitation clearing him for food service work but restricting him for medical convalescence until February 28, 2026.[37] The provider's comments note "Continued RUQ pain worse with jarring movements" and "Med Hold due to pending Cholecystectomy."[38]

### *Challenges to conditions of custody including alleged retaliatory conduct.*

Assistant United States Attorney Zauzmer called the Facility on October 28, 2025 to inquire about Mr. Gonzalez Jose's condition.[39]

Mr. Gonzalez Jose contends Attorney Zauzmer's call caused Facility staff to call him a "liar" and "force" him into a kitchen job in retaliation for seeking compassionate release.[40] Mr. Gonzalez Jose maintains the Facility is denying him medical care for costs reasons, his sick call records show a continuous pattern of unaddressed medical issues, and his presence in the recreation yard (as asserted by Attorney Zauzmer from his call to the Facility) does not indicate good health because the recreation yard is the designated area of the scale to weigh himself and is the designated area for First Step Act classes.

Mr. Gonzalez Jose objects to Attorney Zauzmer's call to Unit Manager Maza instead of to his case manager (although Mr. Gonzalez Jose concedes he had no case manager at the time of Attorney Zauzmer's call to the Facility).[41] Mr. Gonzalez Jose alleges he will suffer irreparable harm if a temporary restraining order is not granted through a continued denial of medical care, harassment by his Unit Team, reading and copying of his legal mail, forced work or forced into disciplinary housing (SHU), and disposal of his personal property without cause.[42]

## II. Analysis

Congress, through section 3582(c)(1)(A), allows us to reduce the term of imprisonment after considering its defined factors in section 3553(a) to the extent they apply if we find

7

extraordinary and compelling reasons warrant a reduction and the reduction is consistent with applicable policy statements issued by the United States Sentencing Commission.[43]

The United States Sentencing Commission through Section 1B1.13(b) of the Sentencing Guidelines identified six categories, individually or in combination, which may constitute extraordinary and compelling reasons for his release. Mr. Gonzalez Jose invokes:

- Medical circumstances under sections 1B1.13(b)(1)(B) and (b)(1)(C);
- Victim of abuse under section 1B1.13(b)(4);
- Other reasons under section 1B1.13(b)(5); and
- Unusually long sentence under section 1B1.13(b)(6).

He also cites changes in the law under section 1B1.13(c) and his rehabilitation under section 1B1.13(d) as bases for compassionate release.

**A. Mr. Gonzalez Jose's medical circumstances do not warrant a sentence reduction.**

Most of Mr. Gonzalez Jose's argument rests with his medical condition under Guidelines section 1B1.13(b)(1)(B) and (b)(1)(C). The Sentencing Commission recommends through these sections we could find extraordinary and compelling reasons where Mr. Gonzalez is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility from which he . . . is not expected to recover" and where Mr. Gonzalez "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and within which [he] is at risk of serious deterioration in health or death."[44]

Mr. Gonzalez Jose asserts he is suffering from a serious physical or medical condition substantially diminishing his ability to provide self-care within the Facility from which he is not expected to recover under section 1B1.13(b)(1)(B).[45] He asserts he is confined to his bed or a chair for 80% of the day because of pain and shortness of breath and requires the help of other incarcerated persons with putting on his shoes and socks, bathing, dressing, getting out of bed, "carrying things and virtually everything in daily life that requires mobility."[46]

Mr. Gonzalez Jose also asserts extraordinary and compelling circumstances under section 1B1.13(C), asserting he suffers from medical conditions requiring specialized medical care he is not receiving from the Facility and the Facility is not following doctors' orders from a December 26, 2024 assessment at the Emergency Department of King's Daughters Medical Center in Ashland, Kentucky.[47]

We thoroughly reviewed Mr. Gonzalez Jose's medical records. Our review confirms there is nothing to suggest he is suffering from a serious physical or medical condition substantially diminishing his ability to provide self-care within the Facility and from which he is not expected to recover. The medical record belies Mr. Gonzalez Jose's assertion the United States misrepresents his current medical and custodial conditions, fails to "acknowledge the systemic deficiencies in [the Bureau of Prisons] medical care," and "overlooks" the extraordinary and compelling reasons warranting a reduction in sentence to time served.[48]

The record from his most recent clinical encounter at the Facility on October 22, 2025 shows he denied chest pain, shortness of breath, headaches, dizziness, increased fatigue, urinary symptoms, bowel or bladder concerns, anxiety, and depression.[49] The medical record belies Mr. Gonzalez Jose's assertion he has shortness of breath and needs assistance in "virtually everything in daily life that requires mobility."[50] On examination, the Facility's nurse practitioner found all

9

assessed areas to be within normal limits (with the exception of the left-sided varicocele with associated pain), including normal gait.[51]

Mr. Gonzalez Jose also asserts extraordinary and compelling circumstances under section 1B1.13(C), asserting he suffers from medical conditions requiring specialized medical care he is not receiving from the Facility. This assertion is again belied by the medical record. The Facility provided, and continues to provide, Mr. Gonzalez Jose with specialized medical care, including referral to a gastroenterology specialist for his gallbladder issue and a urologist for the varicocele repair if Mr. Gonzalez Jose elects to proceed with a varicocelectomy.[52]

Mr. Gonzalez Jose does not establish his medical conditions warrant compassionate release.

**B. Mr. Gonzalez Jose does not demonstrate he is a victim of abuse warranting a sentence reduction.**

Mr. Gonzalez Jose checked off the "victim of abuse" box on his form motion for compassionate release. He did not address this claim in his memorandum in support of his motion. He attached his January 6, 2024 complaint to the Facility and June 24, 2024 appeal of his administrative complaint asserting a staff member made threatening gestures, racist remarks while "lung[ing] at" him, racist remarks about Hispanics, remarks he should not receive medical care, and remarks Mr. Gonzalez Jose "should just go back to [his] country."[53] The Bureau of Prisons investigated and found no staff misconduct.[54]

The Sentencing Commission through Section 1B1.13(b)(4) defines victim of abuse as either sexual abuse involving a "sexual act" as defined in the criminal code or physical abuse resulting in "serious bodily injury" defined by section 1B1.1 in the Application Notes of the Guidelines as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery,

hospitalization, or physical rehabilitation."[55] The abuse—sexual or physical—must be committed by, or at the direction of, a correctional officer, employee, or contractor of the Bureau of Prisons, or any other individual with custody or control over the incarcerated person and "the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger."[56]

Mr. Gonzalez Jose does not allege sexual or physical abuse as defined by the Sentencing Commission in section 1B1.13(b)(4). Mr. Gonzalez Jose's allegations do not come within the victim of abuse extraordinary and compelling circumstances.

### C. Mr. Gonzalez Jose does not demonstrate an "unusually long sentence" or a change in law warrants a sentence reduction.

Mr. Gonzalez Jose invokes section 1B1.13(b)(6) as an extraordinary and compelling reason for a reduction in sentence because of a change in the law under section 1B1.13(c).[57]

Mr. Gonzalez Jose argues the United States Sentencing Commission amended the Guidelines to add section 1B1.13(b)(6) and the Supreme Court's decision *Concepcion v. United States* warrants a sentence reduction to time served. Mr. Gonzalez Jose argues the Supreme Court's 2022 decision in *Concepcion v. United States* is a change in the law requiring us to "have his offenses revised" because he "is not a violent offender."[58] He does not explain how or why he believes the Supreme Court's analysis in *Concepcion* is a change in the law and how it applies to whether he demonstrates extraordinary and compelling reasons for a sentence reduction.

The Supreme Court's decision in *Concepcion* is not a change in the law applicable to Mr. Gonzalez Jose's motion for compassionate release. The Supreme Court in *Concepcion* addressed the sentence Mr. Concepcion received for a "covered offense" involving crack cocaine committed before 2010.[59] Congress passed the Fair Sentencing Act a year after Mr. Concepcion's sentencing

11

correcting the sentencing disparities between crack and powder cocaine, which, if applicable to Mr. Concepcion, would have lowered his Guidelines range.[60] The analysis in *Concepcion* did not address whether a defendant, like Mr. Gonzalez Jose, is eligible for a sentence reduction for extraordinary and compelling reasons under section 3582(c)(1)(A).[61]

Our Court of Appeals distinguishes *Concepcion* and continues to follow its decision in *United States v. Andrews*.[62] In *Andrews*, our Court of Appeals held neither the length of a lawfully imposed sentence nor a nonretroactive change to mandatory minimum sentences establish extraordinary and compelling reasons for a sentence reduction.[63] To the extent Mr. Gonzalez Jose argues *Concepcion* is a change in the law establishing an extraordinary and compelling reason for compassionate release, it is misplaced because the Supreme Court in *Concepcion* "says nothing about . . . the 'threshold question' of whether 'any given prisoner has established an 'extraordinary and compelling' reason for release' under [section] 3582(c)(1)(A)(i)."[64]

Mr. Gonzalez Jose also argues a change in the law makes the sentence he received "higher than average for possession with intent to distribute 1 kilogram or more of heroin" and his three convictions on conspiracy charges are "a mental crime not a physical one [sic]," showing his original sentence "overstates the actions of possession with intent [to distribute] 1 kilogram or more and for having thoughts [sic]."[65] Mr. Gonzalez Jose cites a 1949 Supreme Court decision, *Krulewitch v. United States*, in support of his change in law argument.[66] A seventy-six-year-old decision cannot be a change in the law. And it is inapplicable even if the Supreme Court decided *Krulewitch* today. The Court in *Krulewitch* considered whether the admission of hearsay testimony against the defendant over his objection at trial on conspiracy charges constituted error.[67] This has nothing to do with Mr. Gonzalez Jose's conviction.

Mr. Gonzalez Jose faced a maximum term of life imprisonment and a mandatory minimum of ten years' imprisonment and five years' supervised release up to lifetime supervised release based on his offense level and criminal history category,[68] The United States sought a life term of imprisonment.[69] Mr. Gonzalez Jose's attorney argued conviction on the money laundering offense brought Mr. Gonzalez Jose to a term of life imprisonment but we should impose a Guideline range of 235–293 months imprisonment based on the narcotics convictions before application of the safety valve provision of the Guidelines.[70] Mr. Gonzalez Jose's attorney then argued for a below Guidelines sentence of 180 months as meeting the sentencing goals of section 3553(a).[71]

We imposed a sentence of 220 months imprisonment, well below the Guideline range of 235–293 months. Even if section 1B1.13(b)(6) applies—and we see no change in the law as required for its application—Mr. Gonzalez Jose did not receive an unusually long sentence.

### D. Mr. Gonzalez Jose does not demonstrate "other reasons" warrant a sentence reduction.

Mr. Gonzalez Jose also claims the "other reasons" provision of section 1B1.13(b)(5) qualify as extraordinary and compelling reasons for his release. The Sentencing Commission through paragraph (b)(5) advises we may find extraordinary and compelling reasons when other circumstances or a combination of circumstances, considered alone or together with any reasons described in paragraphs (b)(1) through (4), are similar in gravity with the circumstances in (b)(1) through (4). Paragraphs (b)(1) through (4) are medical circumstances, age of the defendant (at least 65 years old), family circumstances, or victim of abuse.

Mr. Gonzalez Jose asserts his medical conditions, a change in the law, and his rehabilitation combined constitute "other reasons" justifying his release.[72] Mr. Gonzalez Jose does not demonstrate his medical conditions warrant compassionate release as analyzed above. He does not demonstrate he is a victim of abuse in prison as defined by the Sentencing Commission in section

13

1B1.13(b)(4). There is no applicable change in the laws. Mr. Gonzalez Jose asserts his rehabilitation during his incarceration is an extraordinary and compelling reason for a reduction in sentence under section 1B1.13(d). But rehabilitation alone is not an extraordinary and compelling reason for compassionate release.[73] We may consider rehabilitation "in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."[74] None of Mr. Gonzalez Jose's arguments considered individually or collectively warrant a reduction in his sentence.

Mr. Gonzalez Jose does not show extraordinary and compelling reasons for compassionate release. We need not reach the section 3553(a) factors.[75]

### III. Conclusion

Mr. Gonzalez Jose does not show extraordinary and compelling reasons for compassionate release. We deny his Motion for compassionate release without prejudice.

---

[1] ECF 23.

[2] *U.S. v. Sotelo*, 707 F. App'x 77 (3d Cir. 2017).

[3] ECF 1122, 1123.

[4] ECF 1136, 1137.

[5] ECF 1181.

[6] ECF 1493 at 5.

[7] ECF 1488 at 20–25.

---

[8] ECF 1506.

[9] ECF 1494 at 1–126.

[10] *Id.* at 127, 131, 133–138.

[11] *Id.* at 227–245. The records are difficult to read because of poor reproduction quality. There is another chief complaint but it is illegible. *Id.* at 227.

[12] *Id.* at 229.

[13] *Id.* at 231–246.

[14] *Id.* at 232.

[15] *Id.* at 225.

[16] *Id.* at 217.

[17] *Id.* at 201.

[18] *Id.* at 201. Bilirubin testing checks the health of the liver and is used to determine why a patient may have jaundice (yellowing of skin and eyes). *See Bilirubin test*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/bilirubin/about/pac-20393041 [https://perma.cc/Y92W-Y8YR].

[19] ECF 1494 at 201–216. The nurse practitioner instructed Mr. Gonzalez Jose to continue taking metformin (to manage diabetes), atorvastatin (to manage high cholesterol), omeprazole and famotidine (to manage GERD), lisinopril (to manage high blood pressure), and sucralfate (to treat gastric ulcers). *Id.* at 199.

[20] ECF 1494 at 186–194. Biliary testing is performed through a hepatobiliary iminodiacetic acid (HIDA) scan to diagnose problems of the liver, gallbladder, and bile ducts. *See HIDA Scan*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/hida-scan/about/pac-20384701 [https://perma.cc/WCS8-DPET].

[21] ECF 1494 at 186–194. Cholecystitis is inflammation of the gallbladder. *See Cholecystitis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/cholecystitis/symptoms-causes/syc-20364867 [https://perma.cc/26AL-USRN].

[22] ECF 1494 at 187. Choledocholithiasis is the medical term for gallstones present in the common bile duct. *See Choledocholithiasis*, Mayo Clinic, https://my.clevelandclinic.org/health/diseases/24210-choledocholithiasis [https://perma.cc/3JE8-RM95].

[23] ECF 1494 at 180.

---

[24] *Id.*

[25] *Id.* at 24. Surgery to remove the gallbladder is called a "cholecystectomy." *See Cholecystectomy (gallbladder removal)*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/cholecystectomy/about/pac-20384818#:~:text=In%20most%20people%2C%20a%20cholecystectomy,with%20your%20health%20care%20team [https://perma.cc/5EEB-55GZ].

[26] ECF 1493 at 14.

[27] ECF 1494 at 1–5.

[28] *Id.* at 6.

[29] *Id.*

[30] *Id.* at 2–3.

[31] *Id.* at 1.

[32] *Id.*

[33] *Id.* at 5, 178.

[34] *Id.* at 1–4. A varicocelectomy is a surgical procedure to repair varicoceles. *See Varicocelectomy*, Mayo Clinic, https://my.clevelandclinic.org/health/treatments/24234-varicocelectomy [https://perma.cc/VED8-CE3C].

[35] ECF 1506.

[36] *Id.* at 8. The November 3, 2025 document Mr. Gonzalez Jose provided shows a Facility provider put him on "med hold due to pending cholecystectomy." *Id.* at 9.

[37] *Id.* at 8.

[38] *Id.* The medical abbreviation "RUQ" means right upper quadrant of the abdomen. As of August 7, 2025, the Facility's medical provider noted "continued RUQ pain worse with jarring movements" and "Med Hold due to pending Cholecystectomy" but no restrictions. ECF 1494 at 147.

[39] Assistant United States Attorney Zauzmer admits he called the Facility and spoke to Mr. Gonzalez Jose's case manager who also consulted with the unit manager and health services. According to Attorney Zauzmer, the case manager confirmed Mr. Gonzalez Jose is not incapacitated, he performs all activities of daily living without assistance, and, at the time of the call, Mr. Gonzalez Jose appeared in the Facility's recreation yard and the unit manager considered

16

him to be in "good condition and ambulating normally." ECF 1493 at 10–11. We limit our review to the medical records provided by the Facility and Mr. Gonzalez Jose.

[40] Mr. Gonzalez Jose provided two Declarations from other incarcerated persons (Ronald Rogers and Luisnike Santiago Medina) who swear they witnessed the Facility's staff members calling Mr. Gonzalez Jose a "liar" and forcing him to work on kitchen duty even though a Facility medical provider restricted his work on November 3, 2025. ECF 1506 at 6-7.

[41] *Id.* at 3–4.

[42] ECF 1507. We today deny Mr. Gonzales Jose's motion for a temporary restraining Order without prejudice to exhaust his internal administrative remedies and seek appropriate judicial relief outside of a request for compassionate release in a district court enjoying jurisdiction over a claim.

[43] 18 U.S.C. § 3582(c)(1)(A).

[44] U.S.S.G. § 1B1.13(b)(1)(B), (C).

[45] ECF 1488 at 17 (using the pagination assigned by the CM/ECF docketing system).

[46] *Id.*

[47] *Id.* at 20, ¶ 1.B.

[48] ECF 1506 at 1.

[49] ECF 1494 at 1.

[50] ECF 1488 at 25.

[51] ECF 1494 at 1–4.

[52] *Id.* at 3.

[53] ECF 1488 at 42–56.

[54] *Id.* at 54.

[55] U.S.S.G. § 1B1.1, Application Notes §1(L).

[56] U.S.S.G. § 1B1.13(b)(4).

[57] Paragraph (b)(6) provides "[i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would

produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

Paragraph (c) provides "[e]xcept as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction. U.S.S.G. § 1B1.13(c).

[58] ECF 1488 at 22, ¶ 2.B (citing *Concepcion v. U.S.*, 597 U.S. 481 (2022)).

[59] *Concepcion*, 597 U.S. at 487–89.

[60] *Id.* at 487.

[61] *U.S. v. Stewart*, 86 F.4th 532, 534–35 (3d Cir. 2023).

[62] 12 F.4th 255 (3d Cir. 2021).

[63] *Stewart*, 86 F.4th at 533 (citing *Andrews*, 12 F.4th at 261–62).

[64] *Id.* at 535 (quoting *U.S. v. King*, 40 F.4th 594, 596 (7th Cir. 2022)).

[65] ECF 1488 at 22–23, ¶ 2.E.

[66] 336 U.S. 440 (1949).

[67] *Id.* at 441.

[68] ECF 914.

[69] *Id*.

[70] ECF 915 at 3.

[71] *Id.* at 5–8.

[72] ECF 1488 at 19–23.

[73] *Stewart*, 86 F.4th at 535–36.

[74] U.S.S.G. § 1B1.13(d) ("rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant

---

while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.").

[75] *Stewart*, 86 F.4th at 533 (if a court finds extraordinary and compelling reasons exist for a reduction in sentence, it "then turns" to the sentencing factors in section 3553(a) to determine if compassionate release is appropriate).